*Law Offices*
MORGAN, LEWIS & BOCKIUS LLP
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, New Jersey 08540
609-919-6600
Attorneys for Defendant MortgageIT, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOMINICK SAMMARONE, DANIEL SOGLUIZZO, ARA M. MESROPIAN, and all others similarly situated, | |
| Plaintiffs, | Civil Action No. 2:07-cv-03839-WHW-MCA |
| v. | |
| MORTGAGEIT, INC. | **VIA ELECTRONIC FILING** |
| Defendant. | Returnable November 26, 2007 |

---

**BRIEF OF DEFENDANT MORTGAGEIT, INC. IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

On the brief:
    Thomas A. Linthorst, Esq.
    Scott E. Ross, Esq.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

    A.    Plaintiffs' Overtime Claims Against MortgageIT Should Be Dismissed Because Plaintiffs Were Eligible For Overtime And Plaintiff Mesropian's Claims Have Been Released And Dismissed ........................................................ 4

    B.    Plaintiffs' State Law Class Claims For Overtime Under Rule 23 Are Precluded By Federal Law ........................................................................................ 5

        1.    Plaintiffs Class Claims For Overtime Under Rule 23 Are Inherently Incompatible With The FLSA's Opt-In Requirement. ............ 6

        2.    As A Matter Of Law, An Opt-Out Class Action Under Rule 23 Is Not Superior To Other Available Methods For Adjudication ................. 9

        3.    Federal Law Preempts The Use of Rule 23 To Adjudicate Class Claims For Overtime ............................................................................. 12

        4.    Litigating Plaintiffs' State Law Overtime Claims Under Rule 23 Would Violate The Rules Enabling Act By Abridging The Substantive Rights Of Absent Class Members And MortgageIT ............ 18

    CONCLUSION ............................................................................................................. 22

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997)............................................................................. 18

Aquilino v. Home Depot U.S.A., Inc.,
    2006 WL 2023539 (D.N.J. July 18, 2006).......................................... 8

Berry v. 34 Irving Place Corp.,
    4 Wage & Hour Cas. (BNA) 564 (S.D.N.Y. 1944)......................14, 15

Brothers v. Portage National Bank,
    2007 WL 965835 (W.D. Pa. Mar. 29, 2007)....................................... 8

Brooklyn Sav. Bank v. O'Neil,
    324 U.S. 697 (1945)........................................................................... 15

C.E.R. 1988, Inc. v. Aetna Casualty & Surety Co.,
    386 F.3d 263 (3d Cir. 2004)............................................................... 13

Chao v. A-One Medical Services, Inc.,
    346 F.3d 908 (9th Cir. 2003).............................................................. 16

Chevron USA, Inc. v. Vermillon Parish Sch. Board,
    215 F.R.D. 511 (W.D. La. 2003)........................................................ 19

Choimbol v. Fairfield Resorts, Inc.,
    2006 WL 2631791 (E.D. Va. Sept. 11, 2006).................................... 15

Clean Air Markets Group v. Pataki,
    338 F.3d 82 (2d Cir. 2003)................................................................. 14

Cohen v. Beneficial Industrial Loan Corp.,
    337 U.S. 541 (1949)........................................................................... 19

Cooper v. Miller Johnson Steichen Kinnard, Inc., No. Civ. 02-1236,
    2003 WL 1955169 (D. Minn. Apr. 21, 2003).................................... 19

CoreStates Bank v. Huls America, Inc.,
    176 F.3d 187 (3d Cir. 1999)............................................................... 16

De La Cruz v. Gill Corn Farms,
    2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005) ..................................... 9

Delaware River Port Authority v. Fraternal Order of Police,
    290 F.3d 567 (3d Cir. 2002) ................................................................. 17

Edwards v. City of Long Beach,
    467 F. Supp. 2d 986 (C.D. Cal. 2006) ............................................ 3, 9, 10, 11, 12

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) ............................................................................. 6

Gade v. National Solid Wastes Management Association,
    505 U.S. 88 (1992) .........................................................................13, 14

Gasperini v. Ctr. for Humanities, Inc.,
    518 U.S. 415 (1996) ............................................................................ 18

Georgine v. Amchem Products, Inc.,
    83 F.3d 610 (3d Cir. 1996), aff'd, 521 U.S. 591 (1997) ....................................... 10

Gjurovich v. Emmanuel's Marketplace, Inc.,
    282 F. Supp. 2d 91 (S.D.N.Y. 2003) .......................................................... 15

Goff v. Bayada Nurses, Inc.,
    424 F. Supp. 2d 816 (E.D. Pa. 2006) .........................................................13, 16

Gonzalez v. City of New York,
    396 F. Supp. 2d 411 (S.D.N.Y. 2005) ......................................................... 17

Guerrero v. International Bedding Corp.,
    Civ. Action No. 4:06-CV-1713 (M.D. Pa. Mar. 26, 2007) ...................................... 8

Harper v. Yale International Insurance Agency Inc.,
    2004 WL 1080193 (N.D. Ill. May 12, 2004) ................................................... 9

Herring v. Hewitt Associates, Inc.,
    2006 WL 2347875 (D.N.J. Aug. 11, 2006) .................................................... 2, 7

Himmelman v. Cont'l Casualty Co.,
    2006 WL 2347873 (D.N.J. Aug. 11, 2006) .................................................... 2, 7

Hoffman-LaRoche, Inc. v. Sperling,
    493 U.S. 165 (1989) .....................................................................2, 4, 6, 21

International Paper Co. v. Ouellette,
    479 U.S. 481 (1987) ......................................................................12, 14

iii

Kakani v. Oracle Corp.,
    2007 WL 1793774 (N.D. Cal. Jun. 19, 2007) ..................................................... 22

Klein v. Ryan Beck Holdings, Inc.,
    2007 WL 2059828 (S.D.N.Y. July 13, 2007) ..................................................... 22

LaChappelle v. Owens-Illinois, Inc.,
    513 F.2d 286 (5th Cir. 1975) ..................................................................6, 8, 15

Leuthold v. Destination America,
    224 F.R.D. 462 (N.D. Cal. 2004) ...............................................................11, 12

Madrigal v. Green Giant Co.,
    1981 WL 2331 (E.D. Wash. July 27, 1981) ....................................................... 9

McClain v. Leona's Pizzeria, Inc.,
    222 F.R.D. 574 (N.D. Ill. 2004) ..............................................................9, 10, 11

Moeck v. Gray Supply Corp.,
    2006 WL 42368 (D.N.J. Jan. 6, 2006) ......................................................... 2, 7

Molina v. Sea-Land Services, Inc.,
    2 F. Supp. 2d 180 (D.P.R. 1997) .................................................................. 16

Monaco v. Mitsubishi Motors Credit of America, Inc.,
    34 Fed. Appx. 43 (3d Cir. 2002) ................................................................... 5

Muecke v. A-Reliable Automobile Parts and Wreckers, Inc.,
    2002 WL 1359411 (N.D. Ill. June 21, 2002) ..............................................11, 12

Otto v. Pocono Health System,
    457 F. Supp. 2d 522 (M.D. Pa. 2006) ........................................................... 2, 8

Pokorny v. Ford Motor Co.,
    902 F.2d 1116 (3d Cir. 1990) ..................................................................... 14

Prickett v. DeKalb County,
    349 F.3d 1294 (11th Cir. 2003) .................................................................. 12

Thompson v. Merck & Co., Inc.,
    2004 WL 62710 (E.D. Pa. Jan. 6, 2004) ....................................................... 10

Tran v. Le French Baker, Inc.,
    1995 WL 374342 (N.D. Cal. June 14, 1995) ................................................... 16

United States v. Athlone Indus.,
    746 F.2d 977 (3d Cir. 1984) .................................................................. 16

Williams v. Trendwest Resorts, Inc.,
    2007 WL 2429149 (D. Nev. Aug. 20, 2007) ....................................... 8


## STATE CASES

Marx v. Friendly Ice Cream Corp.,
    380 N.J. Super. 302 (App. Div. 2005) ..........................................13, 16


## FEDERAL STATUTES

28 U.S.C. § 2072(b).................................................................4, 18, 21

29 U.S.C. § 216(b)...........................................................................*passim*

29 U.S.C. § 251(a)(7) ............................................................................ 7

29 U.S.C. § 255(a) ............................................................................... 17

Portal-to-Portal Act of 1947, ch. 52, §§ 5(a), 6, 7, 61 Stat. 87-88 ................................ 6


## STATE STATUTES

N.J. Stat. Ann. § 34:11-56a25 ........................................................... 17


## FEDERAL RULES

Fed. R. Civ. P. 23 ......................................................................*passim*

Fed. R. Evid. 201(d) ............................................................................ 5


## OTHER AUTHORITIES

A. Conte and H. Newberg, Newberg on Class Actions § 3.03 (4th ed. 2002) ........................... 18

7B Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 1795 ............................................... 10

Secretary of Labor Amicus Letter Brief submitted in
  Long John Silver's Restaurants, Inc. v. Cole,
  No. 05-CV-3039 (D.S.C. filed Dec. 13, 2005)............................................................... 4, 20

## DOCKETED CASES

Lacon et al. v. MortgageIT, Inc., et al.,
  Civ. Act. No. 04-7847 (VM) (S.D.N.Y) .............................................................................. 5

## INTRODUCTION

Plaintiffs Dominick Sammarone, Daniel Sogluizzo, and Ara Mesropian ("Plaintiffs") are former employees of Defendant MortgageIT, Inc. ("MortgageIT") who were employed as loan officers in New Jersey. Plaintiffs assert claims for overtime under the federal Fair Labor Standards Act ("FLSA"), which they seek to litigate as a nationwide FLSA collective action under FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all other loan officers employed by MortgageIT in the United States. (Compl. ¶ 10). Plaintiffs also assert duplicative claims for overtime under the New Jersey Wage and Hour Law, which they seek to litigate as a class action under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of all other loan officers employed by MortgageIT in New Jersey. (Compl. ¶ 11). For the reasons set forth below, Plaintiffs claims should be dismissed in their entirety.

Plaintiffs allege that MortgageIT failed to pay them overtime wages "by intentionally, willfully and improperly designating the position of loan officer as exempt" from the overtime provisions of the FLSA and the New Jersey Wage and Hour Law. (Compl. ¶ 14). The claims of Plaintiffs Sammarone and Sogluizzo, however, are precluded by the fact that they were classified as <u>non-exempt</u> and eligible for overtime pay throughout their employment with MortgageIT. Plaintiff Mesropian's claims are precluded by the fact that last year he filed a claim for overtime against MortgageIT, accepted a monetary settlement, and his overtime claims through December 31, 2005 were released and dismissed with prejudice. During the short period of his employment that is not covered by the settlement, Mesropian was classified as <u>non-exempt</u> and eligible for overtime pay. Therefore, Plaintiffs' complaint should be dismissed in its entirety.

Even if Plaintiffs could demonstrate the existence of a claim, their attempt to assert overtime claims as an opt-out class action under Rule 23 is precluded by federal law for four separate reasons. First, Plaintiffs' effort to litigate state law overtime claims on an opt-out class

1

basis is "inherently incompatible" with FLSA Section 16(b). Sixty years ago, in response to a flood of "representative" litigation, Congress expressly amended the FLSA to ban representative actions and preclude the adjudication of a worker's overtime rights unless the worker filed his or her "consent in writing" with the court. 29 U.S.C. § 216(b). Thus, only those individuals who affirmatively "opt-in" to an FLSA collective action are bound by the judgment rendered in the case. Congress specifically created the opt-in requirement to protect the rights of absent class members, and to "free[] employers from the burden of representative actions." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 173 (1989). By contrast, in a Rule 23 class action, all class members are bound by the judgment unless they affirmatively opt-out. Thus, in a Rule 23 class action for overtime, the overtime claims of the absent class members are adjudicated without their written consent.

This Court repeatedly has recognized the "inherent incompatibility" between the opt-in requirement of FLSA Section 16(b) and the adjudication of overtime claims (including those under state law) as an opt-out class action under Rule 23.[1] In this case, Plaintiffs' state law claims for overtime are entirely subsumed within their overtime claims under the FLSA. The only purpose or effect of Plaintiffs' state law class action for overtime is to attempt to evade the FLSA's written consent requirement and utilize Rule 23 to adjudicate the overtime claims of absent class members without their written consent. This Court should follow the "clear path being blazed" by the judges of this Court, Otto, 457 F. Supp. 2d at 524, and dismiss Plaintiffs' opt-out state law class action for overtime as "inherently incompatible" with FLSA Section 16(b).

---

[1] Herring v. Hewitt Assocs., Inc., No. 06-267, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006); Himmelman v. Cont'l Cas. Co., No. 06-166, 2006 WL 2347873 (D.N.J. Aug. 11, 2006); Moeck v. Gray Supply Corp., No. 03-1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006). See also Otto v. Pocono Health Sys., 457 F. Supp. 2d 522 (M.D. Pa. 2006).

Second, Plaintiffs' state law class claims for overtime should be dismissed because, as a matter of law, Plaintiffs cannot demonstrate that an opt-out class action "is superior to all other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Court after court has decided that a Rule 23 opt-out class action for overtime is not superior to an opt-in collective action under FLSA Section 16(b), and denied class certification on that basis. As one federal court aptly stated in recently refusing to certify a state law overtime class action under Rule 23, the availability of an opt-in collective action under the FLSA "undercuts all the Rule 23(b)(3) superiority factors." Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006).

Third, the method through which Plaintiffs seek to litigate their New Jersey overtime claims – as a Rule 23 opt-out class action – is both expressly and impliedly preempted by the FLSA's written consent requirement. By its terms, the FLSA's opt-in requirement applies to any "action to recover the liability prescribed" by the FLSA's overtime requirements. 29 U.S.C. § 216(b). This case indisputably is an action to recover the liability prescribed by the FLSA, both because Plaintiffs have asserted FLSA claims and because Plaintiffs' New Jersey claims for overtime are entirely subsumed within their FLSA claims – they seek the same compensation for the same hours of work based on the same alleged facts as the FLSA claim. (Compl. ¶¶ 12, 14, 16, 19-21). Moreover, a Rule 23 state law opt-out class action for overtime is impliedly preempted because New Jersey's Wage and Hour Law substantially incorporates the FLSA's standards, methods, and exemptions from coverage, and because Plaintiffs' state and federal overtime claims arise out of the same alleged facts. Adjudicating the overtime claims of absent class members under New Jersey law necessarily would adjudicate the FLSA rights of absent class members without their written consent under principles of *res judicata* and *collateral*

3

*estoppel*. This is the exact result Congress sought to prohibit in enacting Section 16(b) of the FLSA.

Finally, Plaintiffs' attempt to use a rule of federal procedure – Rule 23 – to adjudicate the overtime claims of absent class members without their written consent in violation of FLSA Section 16(b) contravenes the Rules Enabling Act ("REA"), which prohibits the application of a rule of procedure where such application would "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). As recognized by both the United States Supreme Court and the United States Department of Labor, the written consent requirement under FLSA Section 16(b) is a substantive protection both for absent class members and employers. Sperling, 493 U.S. at 173; Secretary of Labor Amicus Letter Brief in Long John Silver's Rests., Inc. v. Cole, No. 05-CV-3039 (D.S.C. Filed Dec. 13, 2005) (attached as Exhibit A). Indeed, the authors of Rule 23 themselves recognized that as a procedural rule, the opt-out provisions of Rule 23 must give way to the express opt-in requirement that Congress created in Section 16(b). See Fed R. Civ. P. 23 Adv. Comm. Notes ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended.").

## ARGUMENT

### A.    Plaintiffs' Overtime Claims Against MortgageIT Should Be Dismissed Because Plaintiffs Were Eligible For Overtime And Plaintiff Mesropian's Claims Have Been Released And Dismissed.

Plaintiffs claim that MortgageIT failed to pay overtime wages to "Plaintiffs and other similarly situated loan officers during their employment by intentionally, willfully and improperly designating the position of loan officer as exempt" from overtime. (Compl. ¶ 14). Both Plaintiffs Sammarone and Sogluizzo, however, were classified as non-exempt employees and were eligible for overtime pay throughout their employment with MortgageIT. (Declaration of Donna Graham ("Graham Decl.") ¶¶ 3, 4). Therefore, their claims for overtime should be

dismissed in their entirety.

Plaintiff Mesropian's claims also should be dismissed.  Last year, Mesropian filed a
claim for overtime and participated in the settlement of <u>Lacon et al. v. MortgageIT, Inc., et al.</u>,
Civ. Act. No. 04-7847 (VM) (S.D.N.Y), a class and collective action that had sought overtime
and other wages on behalf of MortgageIT loan officers.  On July 31, 2006, the <u>Lacon</u> court
dismissed with prejudice Mesropian's claims against MortgageIT for overtime or other wages
arising at any time up to and including December 31, 2005 and, further, barred Mesropian from
prosecuting any such claims against MortgageIT in the future.[2]  Thus, Mesropian may not assert
any claims against MortgageIT for overtime or other wages for any period prior to January 1,
2006.  <u>See</u>, <u>e.g.</u>, <u>Monaco v. Mitsubishi Motors Credit of America, Inc.</u>, 34 Fed. Appx. 43, 45 (3d
Cir. 2002) (plaintiff's claim barred by settlement and release in prior class action).  Although
Mesropian continued to be employed by MortgageIT until October 24, 2006, he was classified as
non-exempt and was eligible for overtime pay throughout the remainder of his employment in
2006.  (Graham Decl., ¶ 5).  Therefore, Mesropian's claims for overtime should be dismissed in
their entirety.

**B.    Plaintiffs' State Law Class Claims For Overtime Under Rule 23 Are Precluded By
Federal Law.**

Even if Plaintiffs could demonstrate the existence of an overtime claim, Plaintiffs'
attempt to assert state law overtime claims as an opt-out class action under Rule 23 should be
dismissed because such claims conflict with federal law for several reasons.

---

[2]  Order Dismissing Claim Of Non-New York Claimants (attached as Exhibit B); Declaration of
Andy Occhino, ¶ 3, Ex. A.  This Court may take judicial notice of the records filed in another
federal court.  Fed. R. Evid. 201(d).

**1. Plaintiffs Class Claims For Overtime Under Rule 23 Are Inherently Incompatible With The FLSA's Opt-In Requirement.**

The Court should dismiss the class action allegations of Plaintiffs' state law overtime claim because permitting such a claim to go forward would irreconcilably conflict with the written consent, or "opt-in," requirement that Congress has mandated for group overtime actions. In response to a flood of "representative" litigation, Congress amended the FLSA, under the title of "Representative Actions Banned," to preclude the adjudication of an employee's FLSA claim absent the employee's "consent in writing." 29 U.S.C. § 216(b); Pub. L. 49, ch. 52 § 61 Stat. 84, 87 (1947). Congress added the written consent, or "opt-in," requirement to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 173 (1989) (citing Portal-to-Portal Act of 1947, ch. 52, §§ 5(a), 6, 7, 61 Stat. 87-88). Thus, unlike class actions under Rule 23, individuals are not bound by the judgment in a collective action unless they have affirmatively opted into the action. Compare LaChappelle v. Owens-Illinois, Inc., 513 F.2d 286, 289 (5th Cir. 1975) (under the FLSA, "no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent"), with Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974) ("Rule [23] was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit"). This limitation was meant to curb the "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome" of lawsuits under the FLSA. Id. Indeed, the very text of the 1947 amendments to the FLSA reflects Congress' firmly-held view that unless plaintiffs were limited in aggregating claims by the opt-in requirement, "the courts of the country would be burdened with excessive and needless litigation and

6

champertous practices would be encouraged."  Portal-to-Portal Act of 1947 § 1(a)(7), codified at 29 U.S.C. § 251(a)(7).

A series of recent decisions from this Court and its sister courts within the Third Circuit have recognized that allowing plaintiffs to litigate a state law claim for overtime as a Rule 23 opt-out class action would contravene Congress's intent in creating the opt-in requirements of Section 16(b) by adjudicating the overtime claims of absent class members without their written consent.  For example, in Moeck v. Gray Supply Corp., 2006 WL 42368 (D.N.J. Jan. 6, 2006), Judge Bassler rejected the plaintiffs' attempt to maintain a New Jersey state law overtime claim as an opt-out class action under Rule 23.  Id. at *5-6.  The court explained that "Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions."  Id. at *5 (citations omitted).  As a result, the court ruled that "[a]llowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions."  Id. at *5-6.

Chief Judge Brown reached the same conclusion in a pair of decisions issued last year. In Himmelman v. Cont'l Cas. Co., 2006 WL 2347873 (D.N.J. Aug. 11, 2006), the plaintiff sought to proceed both as an FLSA collective action for his federal overtime claims, and as a Rule 23 class action for New Jersey overtime claims.  Relying on Moeck, the court struck the state law class claim because it was "inherently incompatible" with the FLSA opt-in requirement.  Id.  See also Herring v. Hewitt Assocs., Inc., 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (striking plaintiff's state law class claim seeking overtime pay because it was "legally incompatible" with the FLSA's opt-in requirement).

7

In <u>Otto v. Pocono Health Sys.</u>, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006), the court analyzed the trio of this Court's decisions in <u>Moeck</u>, <u>Herring</u>, and <u>Himmelman</u> and concluded that it would follow the "clear path being blazed by our sister district court as well as the direction taken by some of our sister circuits." <u>Id.</u> (citing <u>LaChappelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 289 (5th Cir. 1975) (footnote omitted) (stating that FLSA Section 16(b) and Rule 23 are "mutually exclusive and irreconcilable")). The court granted the defendant's motion to dismiss the plaintiff's class claims for overtime under state law and held that "[t]o allow an Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." <u>Id.</u> <u>See also</u> <u>Brothers v. Portage Nat'l Bank</u>, 2007 WL 965835, at *7 (W.D. Pa. Mar. 29, 2007) ("Because the class certification procedures under 29 U.S.C. § 216(b) are incompatible with those set forth in Fed.R.Civ.P. 23, the Court must dismiss those state-law claims in Plaintiff's Second Amended Complaint that fall within the provisions of the Fair Labor Standards Act."); <u>Guerrero v. Int'l Bedding Corp.</u>, Civ. Action No. 4:06-CV-1713 (M.D. Pa. Mar. 26, 2007) (slip op. attached as Exhibit C) (following <u>Otto</u> and dismissing state law class claim for overtime).

Many other courts, when addressing the intersection of Rule 23 and FLSA Section 16(b) in a variety of contexts, have similarly recognized that litigating opt-out class claims for overtime under state laws is incompatible with the FLSA's opt-in requirement. <u>See</u> <u>Williams v. Trendwest Resorts, Inc.</u>, 2007 WL 2429149, at *4 (D. Nev. Aug. 20, 2007) ("It would be inappropriate to permit Plaintiffs' attempt to circumvent the restrictive opt-in requirements of the FLSA"); <u>Aquilino v. Home Depot U.S.A., Inc.</u>, 2006 WL 2023539, *3 (D.N.J. July 18, 2006) ("[t]he Congressional intent for an opt-in procedure . . . 'would largely be thwarted if a plaintiff

were permitted to back door the shoe horning in of unnamed parties' pursuant to an exercise of supplemental jurisdiction"); Edwards, 467 F. Supp. 2d at 993 (opt-out class for state law overtime claims "would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions"); De La Cruz v. Gill Corn Farms, 2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005) (Congress's intent in requiring an opt-in scheme for the litigation of overtime claims "would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement"); McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 578 (N.D. Ill. 2004) (allowing plaintiff to certify an opt-out class for state law overtime claims "would undermine Congress's intent to limit these types of claims to collective actions"); Harper v. Yale Int'l Ins. Agency Inc., No. 03 C 3789, 2004 WL 1080193, at *5 (N.D. Ill. May 12, 2004) ("Plaintiffs, however, have arguably subverted congressional intent in creating the FLSA opt-in procedure by choosing to seek class certification of their [Illinois Minimum Wage Law] claims instead of pursuing an FLSA collective action."); Madrigal v. Green Giant Co., No. C-78-157, 1981 WL 2331, at *3 (E.D. Wash. July 27, 1981) (dismissing state law class claims that were based on violations of the FLSA, ruling that, "[i]f such a result were permitted, the statutory requirements of the FLSA would effectively be gutted").

Plaintiffs' attempt to circumvent the opt-in requirement of FLSA Section 16(b) by litigating overtime claims under Rule 23 on behalf of absent class members without their written consent should be rejected, and their state law class claims for overtime should be dismissed.

## 2.    As A Matter Of Law, An Opt-Out Class Action Under Rule 23 Is Not Superior To Other Available Methods For Adjudication.

The Court should dismiss or strike Plaintiff's state law class claim for overtime for another independent reason.  An opt-out class action is not superior to another available method

for adjudication of those claims – namely, an opt-in collective action under Section 16(b) of the FLSA.[3]

Plaintiffs assert that they will seek class certification of their state law claims under Rule 23(b)(3). (Compl. ¶ 23). A court may certify a class under Rule 23(b)(3) only if it finds that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). See also Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996), aff'd, 521 U.S. 591 (1997).[4]

Here, it is clear as a matter of law that an opt-out class action under Rule 23 is not superior to the FLSA's opt-in method of adjudication. As discussed above, permitting Plaintiffs' state law claims for overtime to go forward under Rule 23 would thwart Congressional intent and abridge the substantive rights of absent class members and MortgageIT to have overtime claims covered by the FLSA adjudicated under the FLSA's opt-in mechanism. Edwards, 467 F. Supp. 2d at 993 ("allowing both a § 216(b) collective action and a Rule 23 class action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions."); McClain, 222 F.R.D. at 578 (ruling that a state law class action "is not the superior manner in which to proceed" because "[h]olding otherwise would undermine Congress's

---

[3]  Orders striking class allegations – expressly contemplated under Rule 23(d)(4) – are "procedurally inseparable" from subdivision Rule 23(c)(1), which provides that "when a person sues or is sued as a representative of a class, the court must – at an early practicable time – determine by order whether to certify the action as a class action." See 7B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1795 (quoting Fed. R. Civ. P. 23(c)(1)). Either party may move for a determination under Rule 23(c)(1), and the Court need not wait for a plaintiff to file a motion for class certification before rendering its decision on this issue. Id. at § 1785. See also Thompson v. Merck & Co., Inc., 2004 WL 62710, *2 (E.D. Pa. Jan. 6, 2004) (Rule 23(c) and 23(d)(4) empower court to strike class action allegations from the complaint before plaintiffs have filed a motion for class certification).

[4]  For purposes of this motion, MortgageIT only addresses Rule 23(b)'s superiority requirement on the purely legal ground of whether Plaintiffs can maintain opt-out class claims for overtime in the face of the Section 16(b)'s opt-in mechanism. MortgageIT reserves all other arguments relating to the other requirements of Rule 23 for an appropriate time in the future.

10

directive that FLSA collective actions are limited to those parties who opt in to the action"). In contrast, requiring individuals who wish to participate to opt into the suit affords these individuals greater control over their participation in the litigation than would an opt-out action. For example:

> [T]he FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join. By contrast, a Rule 23 class requires that a potential class member take affirmative action not to be bound by the judgment.

Leuthold v. Destination America, 224 F.R.D. 462, 469-70 (N.D. Cal. 2004). See also Muecke v. A-Reliable Auto Parts and Wreckers, Inc., No. 01 C 2361, 2002 WL 1359411 at *2 (N.D. Ill. June 21, 2002) (because class members have an opportunity to decide whether to opt into the FLSA collective action, "it makes no real sense to the Court to certify a class that will automatically include all of the employees unless they opt out") (emphasis in original).

Moreover, permitting Plaintiffs to pursue their state law overtime claims as an opt-out action simultaneously with their opt-in action under the FLSA would create challenges with respect to manageability of the action. For example, asking potential class members – who are not attorneys, but laypersons – both to opt-in and to opt-out with respect to the same substantive claim (a claim for overtime) would likely cause considerable confusion. Leuthold, 224 F.R.D. at 470 ("Confusion would likely result in asking potential plaintiffs both to opt in and to opt out of the claims in this suit"); McClain, 222 F.R.D. at 577 ("it may be confusing for a potential class member to receive a notice indicating that they must opt out of some claims and opt in to others").

For these reasons, court after court has decided that a Rule 23 opt-out class action is not superior to the Congressionally-mandated FLSA opt-in procedure for the adjudication of overtime claims. See Edwards, 467 F. Supp. 2d at 992; Leuthold, 224 F.R.D. at 469; McClain,

222 F.R.D. at 578; <u>Muecke</u>, 2002 WL 1359411, at *2.  As one court aptly stated in refusing to

certify a state law overtime class action under Rule 23, the availability of an opt-in collective

action under the FLSA "undercuts all the Rule 23(b)(3) superiority factors."  <u>Edwards</u>, 467 F.

Supp. 2d at 992 (quoting <u>Leuthold</u>, 224 F.R.D. at 469).

     To the extent any group adjudication would even be appropriate, there exists an

alternative method for adjudicating Plaintiffs' state law claims for overtime that is superior to

proceeding as an opt-out Rule 23 class action.[5]  As a result, MortgageIT respectfully asks the

Court to dismiss Plaintiffs' state law class claims for overtime.

### 3.  Federal Law Preempts The Use of Rule 23 To Adjudicate Class Claims For Overtime.

     A federal statute can preempt the litigation of state law claims by express or implied

preemption.  <u>Int'l Paper Co. v. Ouellette</u>, 479 U.S. 481, 494 (1987) (a state law is preempted by a

federal law, <u>even where the statutes share the same goal</u>, where the state law "interferes with the

<u>methods</u> by which the federal statute was designed to reach this goal") (emphasis added).  Here,

Plaintiffs' method of adjudicating their state law overtime claim, as an opt-out class action under

Rule 23, is both expressly and impliedly preempted by the FLSA's opt-in requirement.

### a.  Plaintiffs' Use of Rule 23 To Adjudicate State Law Class Claims For Overtime Is Expressly Preempted by FLSA Section 16(b).

     The opt-in requirement of Section 16(b) applies, on its face, to any "action to recover the

liability prescribed" by the FLSA's overtime provision.  29 U.S.C. § 216(b).  <u>Prickett v. DeKalb</u>

<u>County</u>, 349 F.3d 1294, 1297 (11th Cir. 2003) ("That plain language [of Section 16(b)] indicates

that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action

as a whole").  The present case indisputably is an "action" to recover the liability prescribed in

---

[5]  MortgageIT does not concede that this action should proceed as a collective action under Section 16(b) of the FLSA and reserves all arguments in that regard.

the FLSA's overtime provision.  This is true because Plaintiffs seek to recover overtime pay under the FLSA <u>and</u> they seek, under the state law claim, the same compensation for the same alleged hours of work, based on identical alleged facts, and based on the same legal standards, as those alleged with respect to the FLSA claim.  (Compl. ¶¶ 12, 14, 16, 19-21).  <u>See</u> <u>Marx v. Friendly Ice Cream Corp.</u>, 380 N.J. Super. 302, 310, 882 A.2d 374, 379 (App. Div. 2005) (New Jersey's Wage and Hour Law "is patterned on the federal Fair Labor Standards Act"); <u>Goff v. Bayada Nurses, Inc.</u>, 424 F. Supp. 2d 816, 820 n.5 (E.D. Pa. 2006) (same).  Therefore, by its express terms, FLSA Section 16(b)'s written consent requirement applies to both of the claims in this action and precludes the litigation of either of those claims as an opt-out class under Rule 23.

### b.    Plaintiffs' Use Of Rule 23 To Adjudicate State Law Class Claims For Overtime Also Is Impliedly Preempted by FLSA Section 16(b).

Plaintiffs' <u>method</u> of adjudicating state law overtime claims as an opt-out class action under Rule 23 also is impliedly preempted by the FLSA's opt-in requirement.  Significantly, MortgageIT does <u>not</u> contend that the FLSA preempts the New Jersey Wage and Hour Law or Plaintiffs' individual claims under that statute.  It is Plaintiffs' attempt to use Rule 23's opt-out procedure to litigate the overtime claims of absent class members without their written consent that is preempted by the FLSA's opt-in requirement.

State law claims are impliedly preempted where, as here, the pursuit of the state law claims would conflict with the policy embodied in federal law, or where it would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>Gade v. Nat'l Solid Wastes Mgmt. Ass'n</u>, 505 U.S. 88, 98 (1992) (citation omitted) (holding that federal OSHA statute setting occupational health and safety standards preempted any state law establishing occupational health and safety standards in areas covered by OSHA).  <u>See also</u> <u>C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.</u>, 386 F.3d 263, 270 (3d Cir. 2004) (holding that state

13

tort law was implicitly preempted by the National Flood Insurance Act where it would impede

Congressional objectives in passing the Act); Pokorny v. Ford Motor Co., 902 F.2d 1116, 1123-

25 (3d Cir. 1990) (state law was implicitly preempted by National Traffic and Motor Vehicle

Safety Act where it conflicted with methods approved in the federal statute and associated

federal safety regulation).

      A federal law will preempt a state law even where the statutes share the same goal, if the

state law "interferes with the methods by which the federal statute was intended to reach this

goal." Gade, 505 U.S. at 88 (emphasis added). The Second Circuit's decision in Clean Air

Mkts. Group v. Pataki, 338 F.3d 82 (2d Cir. 2003), aptly demonstrates the application of this

doctrine. There, the Court found that the Clean Air Act preempted New York's Air Pollution

Mitigation Law ("APML"). Through the Clean Air Act, Congress set up an emission allocation

system where utilities were granted a set number of emission allowances annually, which they

could sell to "any other person who holds such allowances." Id. at 84. New York State passed

the APML, which included a provision that required utilities that sold their emission allowances

to certain "upwind" states to pay New York an amount of money equal to the sale price. Id. at

85. The Second Circuit concluded that this particular provision of the state law was preempted:

> Even where federal and state statutes have a common goal, a state law will
> be preempted 'if it interferes with the methods by which the federal statute
> was designed to reach this goal.' There can be no doubt that [the APML]
> interferes with the method selected by Congress for regulating SO2
> emissions.

Id. at 87 (emphasis added) (citing Ouellette, 479 U.S. at 494).

      Courts have previously invoked the doctrine of implied preemption in holding that the

FLSA preempts state law remedies. For example, in Berry v. 34 Irving Place Corp., 4 Wage &

Hour Cas. (BNA) 564 (S.D.N.Y. 1944), the plaintiff prevailed on his FLSA claims and sought to

recover an award of interest under New York state law. Looking beyond the plain language of

the FLSA, the court looked to Congress' intent in promulgating the liquidated damages remedy

under the FLSA.  Finding that liquidated damages were intended to compensate workers for the

loss of the use of their unpaid wages, the court held that the plaintiff could not recover the state-

law remedy of interest.  As the court explained:

> The statutory provision of the Fair Labor Standards Act for liquidated
> damages is designed to compensate for damages resulting from the
> retention of the workman's pay . . . which otherwise might be 'too obscure
> and difficult of proof.'  Nothing in the statute suggests anything but a
> legislative intention to provide a uniform rule as to such damages, a rule in
> no way dependent upon the varying standards and provisions of the
> several states.

Id.; see also Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697,  715 (1945) (finding that Congress

must have intended to preclude the recovery of interest when it enacted the FLSA since an award

of liquidated damages serves a similar purpose); Choimbol v. Fairfield Resorts, Inc., No.

2:05cv463, 2006 WL 2631791, at *5 (E.D. Va. Sept. 11, 2006) ("[I]t is Congress' clear intent

that the FLSA be the sole remedy available to employees for enforcement of whatever rights he

may have under the FLSA") (internal quotations omitted).

        Similarly, the FLSA impliedly preempts Plaintiffs' method of adjudicating state law

overtime claims on behalf of an opt-out class under Rule 23.  By enacting Section 16(b) of the

FLSA, Congress mandated that only individuals who affirmatively opt into a case by filing a

written consent can be bound by the judgment.  LaChapelle, 513 F.2d at 289 (under the FLSA,

"no person will be bound by or may benefit from judgment unless he has affirmatively 'opted

into' the class; that is, given his written, filed consent"); Gjurovich v. Emmanuel's Marketplace,

Inc., 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003) ("only potential plaintiffs who 'opt-in' can be

'bound by the judgment' or 'benefit from it.'").  If Plaintiffs were permitted to use Rule 23 to

litigate overtime claims on an opt-out basis, the result would be that absent class members who

have never given written consent would nevertheless have their <u>FLSA</u> overtime rights adjudicated.

Where there has been a final judgment on the merits in a prior suit involving the same parties, a subsequent suit will be barred by *res judicata* if it and is based on the same cause of action. <u>CoreStates Bank v. Huls Am., Inc.</u>, 176 F.3d 187, 194 (3d Cir. 1999). In determining whether two suits are based on the same "cause of action," the Third Circuit takes "a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" <u>Id.</u> at 194 (quoting <u>United States v. Athlone Indus.</u>, 746 F.2d 977, 984 (3d Cir. 1984)). Thus, *res judicata* "gives dispositive effect to a prior judgment if a particular issue, although not litigated, <u>could have been raised</u> in the earlier proceeding." <u>Id.</u> (emphasis in original) (citation omitted). As explained above, New Jersey's Wage and Hour Law substantially incorporates the FLSA's standards, methods, and exemptions from coverage. <u>See</u> <u>Marx</u>, 380 N.J. Super. at 310; <u>Goff</u>, 424 F. Supp. 2d at 820 n.5. Indeed, Plaintiffs' factual and legal allegations supporting their claims for overtime under the FLSA and New Jersey's Wage and Hour Law are virtually identical and both claims incorporate the same allegations by reference. (Compl. ¶¶ 12, 14, 16, 19-21). As a result, the adjudication of Plaintiffs' state law overtime claims would bar both them <u>and absent class members</u> from subsequently asserting FLSA claims. <u>See, e.g.</u>, <u>Chao v. A-One Med. Servs., Inc.</u>, 346 F.3d 908, 921-23 (9th Cir. 2003) (dismissing FLSA claim as barred by *res judicata* where the employee had previously litigated a state law claim for overtime); <u>Molina v. Sea-Land Servs., Inc.</u>, 2 F. Supp. 2d 180, 184-85 (D.P.R. 1997) (holding the plaintiff's FLSA claim was barred because an earlier state court judgment on plaintiff's state wage claims "has preclusive effect over the F.L.S.A. cause of action"); <u>Tran v. Le French Baker, Inc.</u>, No. C-94-0482, 1995 WL 374342, at *2 (N.D. Cal. June

14, 1995) (holding that plaintiff, who was previously awarded overtime pay under state law through a state administrative proceeding, was collaterally estopped from pursuing an FLSA claim); Gonzalez v. City of New York, 396 F. Supp. 2d 411, 415-18 (S.D.N.Y. 2005) (holding that employment discrimination claims of police officers were barred by *res judicata* where the Latino Officers Association previously brought a class action involving the same facts and where the plaintiff officer was an absent member of the class).

In this case, Plaintiffs cannot recover under the New Jersey statute unless they prevail on their FLSA claim, and the New Jersey statute does not provide any more relief than the FLSA; in fact, it provides less relief.[6]  Thus, Plaintiffs cannot obtain anything under the New Jersey statute that is not already covered by their FLSA claims and the only purpose or effect of asserting the New Jersey claims is to evade the limitations of FLSA Section 16(b) and adjudicate the overtime claims of absent class members without their written consent.

Because Plaintiffs' New Jersey claims are entirely subsumed within their FLSA claims, seeking the same compensation for the same hours of work based on the same alleged facts under the same legal standards, should the named Plaintiffs in this action be determined to be exempt from overtime as administrative employees under New Jersey law, or otherwise not entitled to overtime pay, that determination would also determine, under principles of *res judicata* and *collateral estoppel*, that both the named Plaintiffs and every absent class member are not entitled to overtime pay under the FLSA.  See Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002) (once a court makes a determination necessary

---

[6]  The FLSA has a two-year statute of limitations, which can be extended to a three-year limitations period if an employer's violation is willful, 29 U.S.C. § 255(a), whereas the New Jersey Wage and Hour Law has a strict two-year statute of limitations.  N.J. Stat. Ann. § 34:11-56a25.  The FLSA also provides a remedy (liquidated damages), 29 U.S.C. § 216(b), which is unavailable under New Jersey's Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a25.

to support its judgment, that determination is conclusive in a subsequent suit based on a different cause of action). An absent class member, John Doe, who thereafter attempts to assert a claim for overtime under the FLSA, would be barred from doing so because his FLSA rights already would have been adjudicated without his written consent through *res judicata* and *collateral estoppel*. This is <u>exactly</u> the result Congress barred when it enacted Section 16(b). Thus, Plaintiffs' attempt to use Rule 23 to adjudicate the overtime rights of absent class members without their written consent is impliedly preempted by FLSA Section 16(b).

### 4.    Litigating Plaintiffs' State Law Overtime Claims Under Rule 23 Would Violate The Rules Enabling Act By Abridging The Substantive Rights Of Absent Class Members And MortgageIT.

Permitting Plaintiffs to use Rule 23 to proceed with their state law overtime claims on an opt-out class basis would violate the Rules Enabling Act, which prohibits the application of a rule of practice and procedure where such application would "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

Rule 23 does not create any substantive rights and is limited in its application by the Rules Enabling Act. <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 612-13 (1997) ("[We are] mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act"). <u>See also</u> Alba Conte & Herbert B. Newberg, <u>Newberg on Class Actions</u> § 1:2 ("[I]t should be recognized that a class action is a procedural device. . . . Significantly, procedural Rule 23 cannot be construed to . . . abridge, modify, or enlarge any substantive right") (citing Rules Enabling Act). Statutory provisions, on the other hand, even those with procedural elements, can confer substantive rights to which the federal rules must give way. For example, in <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 426 (1996), the Supreme Court held that New York's CPLR § 5501 governed the standard of review of a federal jury verdict respecting a state law claim, not the standard that typically governed in the federal

18

courts, because the state standard of review was "both 'substantive' and 'procedural.'"
Likewise, in <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 555 (1949), the Supreme
Court held that the district court was required to apply the New Jersey statute requiring plaintiff
to post "security" for defendant's reasonable litigation expenses to bring a shareholder derivative
class action.  In so holding, the Court observed that "[r]ules which lawyers call procedural do not
always exhaust their effect by regulating procedure."  <u>Id.</u>

Courts have refused to apply Rule 23 where doing so would abridge, modify, or enlarge a
party's substantive rights.  For example, in <u>Chevron USA, Inc. v. Vermillon Parish Sch. Bd.</u>, 215
F.R.D. 511 (W.D. La. 2003), mineral royalty owners, on behalf of a putative class, sought
payments for royalties allegedly due to them from a group of oil companies.  Under the relevant
Louisiana statute, to bring an action in court for a failure to pay royalties, a mineral lessor first
had to give written notice of the failure.  <u>Id.</u> at 515.  The court previously had held that the
named plaintiffs' demand letters to the oil companies were legally insufficient to serve as written
notice on behalf of unnamed royalty owners, such that absent class members had no right of
action under the statute.  The named royalty owners nevertheless asserted a Rule 23 opt-out class
on behalf of the absent class members.  The court refused to certify the class, concluding that
doing so would be inconsistent with the individual notice requirement of the Louisiana statute,
and that permitting the claims of absent class members to be adjudicated under Rule 23 where
the individual notice requirement of the Louisiana statute had not been satisfied would violate
the Rules Enabling Act.  <u>Id.</u>  <u>See also</u> <u>Cooper v. Miller Johnson Steichen Kinnard, Inc.</u>, No. Civ.
02-1236, 2003 WL 1955169, at *5 (D. Minn. Apr. 21, 2003) (refusing to certify a mandatory
non-opt-out settlement class because the Rules Enabling Act does not permit modification of any

substantive right, and the creation of the proposed class would compromise the absent class members' substantive claim without due process).

In the present case, the Court similarly should refuse to permit Rule 23, a <u>procedural</u> rule, to be applied in such a way that it would abridge the <u>substantive</u> rights of absent class members. Section 16(b) of the FLSA creates a substantive right in employees to have their FLSA overtime claims adjudicated only with their written consent. The United States Department of Labor, the federal agency charged with interpreting and enforcing the FLSA, has explained that this is a substantive right that is protective of employees:

> Section 16(b) of the FLSA unambiguously provides employees the right not to have their statutory claims litigated without their written consent. The Secretary, as the official responsible for the administration of the FLSA (see 29 U.S.C. 204), has a significant interest in protecting this clearly delineated employee right. . . . The advance written consent requirement, as distinguished from procedural provisions in the FLSA, goes to an employee's fundamental right not to be included as a plaintiff in a lawsuit or arbitration. Thus, in the Secretary's view, the right to participate in a collective action only upon submission of one's written consent <u>is a substantive right</u>.

Secretary of Labor Amicus Letter Brief in <u>Long John Silver's Rests., Inc. v. Cole</u>, No. 05-CV-3039 (D.S.C. Filed Dec. 13, 2005) (emphasis added). Indeed, the authors of Rule 23 recognized that, as a procedural rule, Rule 23's opt-out provisions must give way to the substantive rights Congress created in the express opt-in requirement of Section 16(b). <u>See</u> Fed R. Civ. P. 23 Adv. Comm. Notes ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended.").

Permitting Plaintiffs to use a procedural rule to litigate overtime claims on an opt-out basis would abridge the substantive rights of absent class members by adjudicating their FLSA rights without their written consent. As explained above, any determinations by this Court as to Plaintiffs' rights to overtime wages under New Jersey law would necessarily determine the same

20

issues under the FLSA. Therefore, through *res judicata* and *collateral estoppel*, the adjudication of Plaintiffs' overtime claims on behalf of a Rule 23 opt-out class would adjudicate the FLSA rights of <u>absent</u> class members without their written consent. To allow Plaintiffs to use Rule 23 to eviscerate the substantive rights of absent class members this way would violate the Rules Enabling Act.

In addition to granting employees the right not to have their FLSA claims adjudicated without their written consent, Congress granted employers the substantive right to defend claims for unpaid overtime only against individuals who bring or affirmatively opt into an action. <u>See, e.g.</u>, <u>Hoffman-La Roche</u>, 493 U.S. at 173 (the FLSA were enacted for "the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"). Permitting Plaintiffs to litigate their overtime claims as an opt-out class action under Rule 23 would abridge the substantive right Congress conferred upon employers like MortgageIT not to litigate overtime claims against absent class members who have never consented to participating in the suit.

Because Plaintiffs' use of Rule 23 to litigate their overtime claims on behalf of an opt-out class would abridge the substantive rights Congress conferred on absent class members and employers when it amended the FLSA to establish the written consent requirement, this application of Rule 23 is the precluded by the Rules Enabling Act, 28 U.S.C. § 2072(b).[7]

---

[7] MortgageIT acknowledges that although this Court and many others have precluded plaintiffs from litigating state law claims for overtime as opt-out class actions for overtime under Rule 23, several courts have not accepted the arguments that the FLSA or the Rules Enabling Act preclude such claims. Those courts, however, did not consider or address the full implications of the fact that the doctrines of *res judicata* and *collateral estoppel* will operate to adjudicate the FLSA claims of absent class members. The one court that has addressed this issue concluded, correctly, that the adjudication of state law overtime claims would have preclusive effect on class members' FLSA rights. But that court then went on to conclude, incorrectly, that the substantive rights of absent class members not to have their FLSA claims adjudicated

## CONCLUSION

The claims of Plaintiffs Sammarone and Sogluizzo that MortgageIT misclassified them as exempt from state and federal overtime laws should be dismissed because they were, at all times, classified as non-exempt and eligible for overtime. Plaintiff Mesropian's claims should be dismissed because he has released and dismissed with prejudice any claim for overtime he may have had up through December 31, 2005. Thereafter, he, too, was classified as non-exempt and eligible for overtime. For these reasons, Plaintiffs' complaint should be dismissed in its entirety.

Additionally, even if Plaintiffs could demonstrate the existence of a claim, their assertion of class claims for overtime under Rule 23 inherently conflicts with the express written consent requirement Congress mandated for group actions for overtime covered by the FLSA, fails the Rule 23 analysis for superiority as a matter of law, is both expressly and impliedly preempted by the FLSA, and is barred by the Rules Enabling Act. For all these reasons, even if Plaintiffs' individual claims survive dismissal, MortgageIT respectfully requests that the Court dismiss Plaintiffs' Rule 23 class claim for overtime.

---

through *res judicata* "can be protected by opting out of the Rule 23 class action." Klein v. Ryan Beck Holdings, Inc., 2007 WL 2059828, *7 (S.D.N.Y. July 13, 2007). Indeed, the Klein court's view that an absent class member must opt out of an action to protect his or her FLSA rights flies in the fact of the FLSA, the case law interpreting it, and the Department of Labor's position that employees have a right not to have their FLSA claims litigated without their written consent. See, supra, 6-7, 12-13, 15-18, 20. As another federal court recently recognized in denying a motion to preliminarily approve a class and collective action settlement which attempted to resolve the FLSA claims of absent class members without their written consent, "[it] is unconscionable to try to take away the FLSA rights of *all* workers, whether or not they choose to join in affirmatively." Kakani v. Oracle Corp., 2007 WL 1793774 (N.D. Cal. Jun. 19, 2007) (emphasis in original).

Respectfully submitted,

_____/s/ Scott E. Ross_____

DATED:  October 22, 2007

Thomas A. Linthorst
Scott E. Ross
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey 08540
609.919.6600
609.919.6701 (fax)

ATTORNEYS FOR DEFENDANT
MortgageIT, Inc.

**EXHIBIT A**

December 13, 2005

The Honorable Henry F. Floyd
United States District Court for
the District of South Carolina
Donald S. Russell Federal Building
201 Magnolia Street
Spartanburg, South Carolina 29301

Re:  Long John Silver's Restaurants, Inc. v. Cole, et al.,
     No. 6:05-CV-3039

Dear Judge Floyd:

The Secretary of Labor ("Secretary"), United States
Department of Labor ("Department"), submits this letter as
*amicus curiae* in support of the motion to vacate the
September 19, 2005 Class Determination Partial Final Award
("Class Determination Award") filed by Long John Silver's
Restaurants, Inc. and Long John Silver's, Inc.
(collectively "LJS") in the arbitration proceeding Cole v.
Long John Silver's Restaurants, Inc. et al., American
Arbitration Association Case No. 11-160-00194-04.  The
arbitrator's Class Determination Award raises the issue
whether, in a class arbitration of claims under the Fair
Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. 201 et
seq., certain claimants-employees may litigate the claims
of other putative class members without obtaining their
written consent as required under section 16(b) of the Act,
29 U.S.C. 216(b).  Section 16(b) of the FLSA unambiguously
provides employees the right not to have their statutory
claims litigated without their written consent.  The
Secretary, as the official responsible for the
administration of the FLSA (see 29 U.S.C. 204), has a
significant interest in protecting this clearly delineated
employee right.

Discussion

Section 16(b) provides employees a private right of action
to recover back wages due as a result of violations of the

Act's minimum wage and overtime provisions (29 U.S.C. 206, 207), together with an equal amount as liquidated damages, as well as reasonable attorneys fees, and costs.  The action may be "maintained  . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. 216(b).  The section further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Id.  Thus, section 16(b) grants employees a distinct substantive right to participate in a collective adjudication of their claims if, and only if, they provide a written consent that is filed in court.

The legislative history further bolsters this conclusion.  The original 1938 enactment did not contain the written consent or "opt-in" provision.  In 1947, Congress amended section 16(b) in the Portal-to-Portal Act Amendments to the FLSA.  § 5, 61 Stat. 84, 87-88 (1947).  These amendments added the opt-in requirement and repealed a provision in section 16(b) "permitting an employee or employees to designate an agent or representative to maintain an action for and in behalf of all employees similarly situated."  H.R. Conf. Rep. No. 80-326, at 13 (1947).  These changes had "the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions."  Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989).  Moreover, as the Eleventh Circuit explained in Cameron-Grant v. Maxim Healthcare Services, Inc., 347 F.3d 1240, 1248 (2003), cert. denied sub nom. Basil v. Maxim Healthcare Services, Inc., 541 U.S. 1030 (2004), Congress' goal in adding the opt-in provision was to prevent collective actions  "from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit," quoting United Food & Commercial Workers Union v. Alberston's, Inc., 207 F.3d 1193, 1200 (9th Cir. 2000), quoting, in turn, Arrington v. National Broadcasting Co., Inc., 531 F. Supp. 498, 501 (D. D.C. 1982) (brackets, and internal quotation marks omitted).  Senator Donnell, then Chairman of the Senate Judiciary Committee, articulated the rationale for the provision:  "'[I]t is certainly unwholesome to allow an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not have a solitary person behind him, and then later on have 10,000 men join in the suit, which was

not brought in good faith, was not brought by a party in interest, and was not brought with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit.'"  See Arrington, supra, 531 F. Supp. at 502, quoting 93 Cong. Rec. 2182 (1947).  Thus, the legislative history makes it clear that Congress intended an employee's FLSA claims to be litigated as part of a collective action only with his or her express written consent.

In this case, the arbitrator refused to apply the opt-in requirement of section 16(b).  Instead, he concluded that the class arbitration must proceed in accordance with the American Arbitration Association ("AAA") Supplementary Rules for Class Arbitration, which provide for a class arbitration that binds each class member unless he or she requests to be excluded from the class.  This AAA requirement is analogous to the requirements imposed by Federal Rule of Civil Procedure 23 and, as such, is entirely different from the FLSA's written consent requirement.  See LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288-89 (5th Cir. 1975) (explaining that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA s[ection] 16(b).  * * * Rule 23(c) provides for 'opt-out' class actions.  FLSA s[ection] 16(b) allows as class members only those who 'opt-in.'  These two types of class actions are mutually exclusive and irreconcilable"); see also Cameron-Grant, supra, 347 F.3d at 1248 ("[T]he 1947 amendments to the FLSA prohibit what precisely is advanced under Rule 23 – a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members").  As the case law thus shows, there is an irreconcilable difference between the opt-out procedures used by the AAA and the requirements of section 16.

Furthermore, the distinction between the advance written consent requirements and a Rule 23 opt-out class is important to both employers and employees.  The distinction fundamentally impacts the relative litigation strengths of the parties because an opt-out class mechanism usually results in a larger number of class members.  See De Asencio v. Tysons Foods, Inc., 342 F.3d 301, 310 (3d Cir. 2003).  This distinction was not lost on the arbitrator in this case.  See Class Determination Award at 6 (recognizing that "[t]he choice between an opt-in and an opt-out

3

procedure is not abstract. The significant decline in the
number of probable class members has been noted"). As the
court in De Ascencio, supra, explained, "[t]he aggregation
of claims, particularly as class actions, profoundly
affects the substantive rights of the parties to the
litigation." Id. at 311 (emphasis added). However, at the
same time, Rule 23 opt-out classes tend to include members
with "no real involvement in, or knowledge of, the
lawsuit." Cameron-Grant, supra, 347 F.3d at 1248. Each
member of the class, nevertheless, is bound by the
arbitrator's decision. See Eisen v. Carlisle & Jacquelin,
417 U.S. 156, 176 (1974) ("Rule [23] was intended to insure
that the judgment, whether favorable or not, would bind all
class members who did not request exclusion from the suit."
(citation omitted)); see also Robinson v. Sheriff of Cook
County, 167 F.3d 1155, 1157 (7th Cir.) (noting that
dismissal of a class action has "res judicata effect on any
unnamed class members who did not opt out" (citations
omitted)), cert. denied, 528 U.S. 824 (1999); AAA
Supplementary Rule 6(b)(5) (the Arbitrator's Notice of
Class Determination must state "the binding effect of a
class judgment on class members"). It was precisely this
result that Congress intended to preclude by enacting the
current section 16(b) in 1947. As evinced in the statutory
language ("unless he gives his consent in writing to become
such a party"), and the legislative history, Congress's
clear aim was to ensure that each employee expressly
consents to any collective adjudication of his or her
rights under the FLSA.

As we previously stated, Congress has clearly mandated that
employees must provide their express written consent to
participate in a collective action under the FLSA. The
advance written consent requirement, as distinguished from
procedural provisions in the FLSA, goes to an employee's
fundamental right not to be included as a plaintiff in a
lawsuit or arbitration. Thus, in the Secretary's view, the
right to participate in a collective action only upon
submission of one's written consent is a substantive right,
and therefore cannot be waived. This is consistent with
Supreme Court authority. In Gilmer v. Interstate/Johnson
Lane Corp., 500 U.S. 20, 26 (1991), the Court stated that
"'[b]y agreeing to arbitrate a statutory claim, a party
does not forgo the substantive rights afforded by the
statute; it only submits to their resolution in an
arbitral, rather than a judicial, forum,'" quoting
Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,

473 U.S. 614, 628 (1987)) (bracketed matter added by the
court). Appellate courts have followed this principle.
See, e.g., Spinetti v. Service Corp. Int'l, 324 F.3d 212,
218 (3d Cir. 2003) (Under Gilmer, "statutory substantive
rights are unaffected by the choice of dispute resolution."
(citation omitted)); Williams v. Cigna Financial Advisors,
Inc., 197 F.3d 752, 763 (5th Cir. 1999) ("Gilmer made it
clear that a party agreeing to arbitrate a federal
statutory claim does not forgo the substantive rights
afforded by the statute, and that claims under federal
statutes are appropriate for arbitration so long as the
prospective litigant may vindicate his or her statutory
cause of action in the arbitral forum, and the statute will
continue to serve both its remedial and deterrent
function." (citation omitted)), cert. denied, 529 U.S. 1099
(2000); Hooters of America, Inc. v. Phillips, 173 F.3d 933,
937 (4th Cir. 1999) (quoting Gilmer). The right is personal
to the individual employee and is substantive; an employee
can no more waive his right to consent to suit on his
behalf than he can waive his right to the minimum wage or
overtime pay. See Barrentine v. Arkansas-Best Freight
System, Inc., 450 U.S. 728, 740 (1981). While an employee
can waive procedural rights, for example, the right to
litigate his FLSA claim in a judicial forum and to litigate
that claim in a class action, an employee cannot waive the
right not to participate in a class action without his
advance written consent. The Secretary notes that neither
the respondents nor the arbitrator cite any case that
allows parties to implicitly waive a clear statutory
mandate.

Because the statutory written consent provision is
substantive, when applying the Federal Arbitration Act
("FAA"), 9 U.S.C. 1 et seq., courts should require
arbitrators to comply with it.[1] In this case, the
arbitrator refused to do so, observing that to proceed
using the FLSA's written consent provision "would
significantly reduce the class population in derogation of
fundamental FLSA objectives." (Class Determination Award at
9). However, in addition to setting forth the fundamental
FLSA objectives, Congress expressly chose the form of
collective action that would best further the remedial

---

[1] Under the FAA, federal courts vacate arbitration awards
that evidence a manifest disregard of law. See, e.g., Apex
Plumbing Supply, Inc. v. U.S Supply Co., Inc., 142 F.3d
188, 193 & n. 5 (4th Cir. 1998).

purposes of the FLSA – the collective action, not the class
action.  The arbitrator should not substitute his own
judgment for that of Congress.[2]

In all events, to the extent that employers and employees
can agree to utilize a Rule 23-type provision in an FLSA
class arbitration, the Secretary believes that any such
agreement must be explicit.  Here, the LJS arbitration
agreement does not contain an express waiver of the
employees' rights to participate in a collective action
solely on the basis of their written consent.  In this
case, the pertinent contract language merely states that
"[a]ny arbitration will be administered by the American
Arbitration Association under its commercial arbitration
rules[.]"  LJS's *The Real Resolution Solution Program*
Program Booklet (Sept. 1995) at 10.  This language does not
constitute an express waiver of section 16(b)'s written
consent requirement.

When, as in this case, an arbitral forum's rules directly
conflict with an express congressional directive,
particularly where application of those rules threatens to
interfere with the substantive rights of the employees
protected under the statute, any waiver, if permissible at
all, must be express.  The critical consequences to
employees of being included as class members demand no
less.  Because the parties' arbitration agreement in this
case does not reflect a clear waiver of the FLSA opt-in
requirement, the Secretary urges the court to vacate the
Class Determination Award with respect to the conclusion
that the class arbitration must proceed in accordance with

---

[2]  Indeed, given the express statutory requirement, an
employee who has never provided his affirmative consent to
the collective arbitration of his FLSA claims would have a
compelling basis on which to argue that he should not be
bound by an adverse arbitral decision.

the Rule 23-type provisions of the AAA Rules.

Respectfully submitted,

Howard M. Radzely
Solicitor of Labor

Steven J. Mandel
Associate Solicitor

Anne Fugett
Senior Attorney

U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
(202) 693-5555


s/George J. Contis
George J. Contis, SC Bar No. 234
Assistant U.S. Attorney
P.O. Box 10067
Greenville, SC 29603
864-282-2100

Attachment:  certificate of service

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVAN LACON, FREYA DENITTO,  )
NICHOLAS DARAGONA, and  )
CHRISTIAN KOHL, et al.  )
  )
  Plaintiffs,  )
  )
  v.  )  Case No. O4 CIV 7847 (VM)
  )
MORTGAGE IT, INC. and  )
IPI SKYSCRAPER MORTGAGE  )
CORPORATION  )
  )
  Defendants.  )

## ORDER DISMISSING CLAIMS OF NON-NEW YORK CLAIMANTS

In accordance with the Joint Stipulation of Settlement and Release ("Settlement") filed with this Court on April 10, 2006, it is hereby:

ORDERED that the claims of the Non-New York Claimants listed on Attachment A, each of whom has filed a Consent Under the Fair Labor Standards Act in this case, are dismissed on the merits and with prejudice; and it is further

ORDERED that all Non-New York Claimants listed on Attachment A are barred from prosecuting against the Non-New York Claimants' Released Parties any and all Non-New York Claimants' Released Claims arising during the Non-New York Claimants' Released Period, as set forth in paragraph 58 of the Settlement.

IT IS SO ORDERED.

DATED: 31 July 2006

_____
The Honorable Victor Marrero

## ATTACHMENT A

| LAST NAME | FIRST NAME |
|-----------|------------|
| Adams | Lee |
| Avidon | Mitchell |
| Bailey | Leon |
| Barkai | Ariel |
| Bolsue | Somm |
| Brown | Walter |
| Browning | Charles |
| Cannata | Donald |
| Caulfield | Michael |
| Caylor | Robert |
| Corbin | Cameron |
| Dorbian | Elliot |
| Faulkner | Jennifer |
| Fink | Barry |
| French | Peter |
| Fullam | Francis |
| Galatt | David |
| Gatewood | Matthew |
| Gittens | Robert |
| Gorman | David |
| Hanscom | Michael |
| Hauser | Jonathan |
| Hudson | Sara |
| Jeter | DeWayne |
| Kreisher | Brett |
| McCutchen | Huey |
| Mesropian | Ara |
| Messerli | Timothy |
| Mo | Lawrence |
| Moritz | Darren |
| Myers | Kenneth |
| Norris | Steve |
| Obeidallah | Jason |
| Paradise | John |
| Pimentel | Marco |
| Potter | Patricia |
| Roche | Thomas |
| Sasso | Justin |
| Schragen | Jerald |
| Schroeder | Kevin |
| Sparks | Nicole |
| Spreen | Ryan |
| Stout | Scott |
| Swinton | Damon |
| Tidwell | Andrew |
| Todd | Jennifer |
| Tuchman | Lillian |

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIGOBERTO HERREJON GUERRERO | : | |
| and DANILO "JUNIOR" ISAULA, | : | Case No. 4:06-CV-1713 |
| | : | |
| Plaintiffs, | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL BEDDING | : | |
| CORPORATION, f/k/a IBC GROUP, INC., | : | |
| f/d/b/a IBC OF PENNSYLVANIA, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

## March 26, 2007

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Pending before this Court are three Motions.  The first is a Motion to Strike Plaintiffs' Class and Collection Action Allegations, or in the Alternative, for More Definite Statement ("Motion to Strike or for More Definite Statement"), filed by Defendant International Bedding Corporation ("Defendant" or "IBC") on October 27, 2006.  (Rec. Doc. 7).  The second is a Motion for Notice to the Production Bonus, Opt-In Class ("Motion for Notice"), filed by Plaintiffs Rigoberto Herrejon Guerrero and Danilo "Junior" Isaula (collectively, "Plaintiffs") on February 13, 2007.  (Rec. Doc. 24).  The third is a Motion for Rule 23 Certification of the

1

"Production Bonus Class" ("Motion to Certify"), filed by Plaintiffs on February 16, 2007. (Rec. Doc. 27).

For the reasons that follow, the Motion to Strike or for More Definite Statement shall be granted in part and denied in part, the Motion for Notice shall be granted to the extent specified herein, and the Motion to Certify shall be denied as moot.

## PROCEDURAL HISTORY/FACTUAL BACKGROUND:

On August 31, 2006, Plaintiffs Rigoberto Herrejon Guerrero ("Herrejon") and Danilo "Junior" Isaula ("Isaula") filed a Complaint in the above-captioned action. (Rec. Doc. 1-1). Therein, Herrejon and Isaula brought claims under both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101, et seq. Each Plaintiff brought a FLSA claim "for himself and as a representative action on behalf of other similarly situated employees" of IBC and a PMWA claim "for himself and as a class action . . . ." (Rec. Doc. 1-1, ¶ 3).

On October 27, 2006, Defendant filed the Motion to Strike or for More Definite Statement. (Rec. Doc. 7). While the Motion to Strike or for More Definite Statement was pending before this Court, Plaintiffs filed two Motions. On February 13, 2007, Plaintiffs filed the Motion for Notice. (Rec. Doc. 24). Shortly

thereafter, on February 16, 2007, Plaintiffs filed the Motion to Certify.  (Rec. Doc. 27).

The parties' thorough briefing on these three Motions provides a comprehensive summary of both the circumstances that led to the filing of the instant action and the posture of this litigation.  Accordingly, the following recitation is taken therefrom and is sufficient for our disposition of the pending Motions.

Plaintiffs' claims arise out of their alleged former employment by Defendant.  (Rec. Doc. 1-1, ¶ 1).  Defendant purports to be a "national manufacturer of quality sleep systems . . . that operates manufacturing facilities in Arizona, Florida, Indiana, Nevada, Pennsylvania, Tennessee, Texas, and Virginia." (Rec. Doc. 33 at 3).  Herrejon and Isaula were allegedly employed at one of Defendant's two Schuylkill County, Pennsylvania, plants beginning in the spring of 2000 and the spring of 2005, respectively.  (Rec. Doc. 1-1, ¶ 6).

Plaintiffs instituted the instant action because they assert that during the course of their employment with Defendant, they were improperly denied at least a portion of the overtime pay to which they were entitled.  (Rec. Doc. 9 at 3).  Plaintiffs attempt to bring their FLSA and PMWA claims as collective and class actions, respectively, because they allege that other employees in situations similar

3

to theirs were also improperly denied overtime pay. (Rec. Doc. 1-1, ¶¶ 11-12).

However, as Plaintiffs concede, their claims "arise from two distinct policies of the Defendant." (Rec. Doc. 9 at 3). Herrejon's claims are based on IBC's alleged failure to include his production bonus in the calculation of his overtime pay rate during those weeks in which he received such a bonus. (Rec. Doc. 1-1, ¶ 22). Isaula's claims are based on IBC's alleged failure to pay him overtime for those hours that he worked in excess of forty (40) hours per week, which Isaula contends occurred because IBC paid him in cash, indirectly through labor agents. (Rec. Doc. 1-1, ¶ 26).

While the instant Motions were pending, a significant amount of discovery occurred.[1] Indeed, discovery has revealed that IBC did not include production bonuses in the calculation of the overtime pay rate for Herrejon, or any other IBC

---

[1] By way of background, Plaintiffs propounded an initial set of interrogatories, requests for admissions, and requests for production of documents on Defendant, and Defendant has answered all of them. (Rec. Doc. 28 at 3). Plaintiffs also propounded a second individual interrogatory that requested the names and addresses, as well as other background information, of members of the alleged "production bonus class." (Rec. Doc. 28 at 4). Defendant had apparently not provided the requested information in said interrogatory by the time of Plaintiffs' Motion for Notice, as a portion thereof requests that this Court order Defendant to provide Plaintiffs with such information for all 677 persons alleged to fall within the class. (Rec. Doc. 24 at 6). Moreover, although the depositions of Defendant's corporate executives in Florida have been rescheduled several times (doc. 28 at 4), at least one of Defendant's representatives has been deposed (doc. 35, Exh. F).

Additionally, Defendant has propounded written discovery requests on both named Plaintiffs, as well as the other Plaintiffs who have thus far opted-in to this action. (Rec. Doc. 28 at 4). Whether Plaintiffs have responded to Defendant's requests is unclear on this record.

employees earning production bonuses at seven other IBC plants, at all times

relevant prior to October 2006. (Rec. Docs. 24, Exh. A; 35 at 9, Exh. F at 22-23).

Accordingly, Plaintiffs filed their Motion for Notice to other current and/or former

IBC employees whom they allege are similarly situated to Herrejon because their

overtime pay rate was calculated without taking their bonuses into consideration, a

group alleged to number 677 persons. (Rec. Doc. 28 at 6-7). Plaintiffs refer to this

class as the "production bonus class," and for the sake of simplicity, we will do the

same here.

As the Motion to Strike or for More Definite Statement and the Motion for

Notice have been fully briefed, they are ripe for disposition. The time in which to

file a Reply Brief regarding the Motion to Certify has not expired, but we decline

to await the expiration thereof because our disposition of the other Motions moots

the Motion to Certify.

**DISCUSSION:**

**I.      Plaintiffs' State Law Claims**

We begin our consideration of the pending Motions by noting that we will

dismiss Plaintiffs' PMWA claims based on our logic in Otto v. Pocono Health

System, ___ F. Supp. 2d ___, 2006 WL 3059924 (M.D. Pa. Oct. 27, 2006), where

we held that "[t]o allow an [FLSA] Section 216(b) opt-in action to proceed

accompanied by a Rule 23 opt-out state law class action claim would essentially

nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of

Section 216(b)'s opt-in requirement." Id. at *2.  We see no reason to reconsider

our reasoning thereof, particularly in light of the fact that the Court of Appeals for

the Third Circuit denied the plaintiffs' Petition for Permission to Appeal that

decision.  (See Docket No. 4:06-CV-1186, Rec. Doc. 27).  Moreover, the factual

circumstances surrounding the instant action and the posture in which we are

currently situated do not distinguish Otto as "Plaintiffs Admit There is no Material

Distinction between This Case . . . " and Otto.  (Rec. Doc. 19 at 2).  Accordingly,

Defendant's Motion to Strike or for More Definite Statement shall be granted to

the extent that Plaintiffs' PMWA claims will be dismissed.[2]

Our determination that Plaintiffs' PMWA claims should be dismissed

---

[2] We are cognizant that Defendant's Motion to Strike or for More Definite Statement also sought to have this Court either strike Plaintiffs' FLSA claims to the extent that Plaintiffs seek to bring them as a collective action or actions or, in the alternative, to require a more definite statement as to these claims.  (Rec. Doc. 13 at 12).

However, particularly in light of the subsequent filings, we will deny these portions of Defendant's Motion to Strike or for More Definite Statement.  First, we will deny Defendant's request to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure because we see no reason to consider the parties' somewhat abbreviated arguments for and against permitting the FLSA collective actions to proceed contained within the briefing on the Motion to Strike or for More Definite Statement given the comprehensive analysis that the parties have provided in the briefing on the Motion for Notice as to Herrejon's § 216 claim.  (See Rec. Docs. 24, 28, 33-35).  Second, we will deny Defendant's request for more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure because Defendant's subsequent submissions make it clear that IBC understands the claims that Plaintiffs seek to bring and the bases therefor.

necessarily moots Plaintiffs' Motion to Certify the "production bonus class" that Herrejon seeks to represent under the PMWA. Accordingly, we will deny Plaintiffs' Motion to Certify as moot.

## II.    Plaintiffs' FLSA Claims

Initially, we note that Defendant's Brief in Support of the Motion to Strike or for More Definite also requested that this Court order that Plaintiffs' actions be severed "based on their individualized factual bases." (See, e.g., Rec. Doc. 8 at 10 n.1). In response, Plaintiffs acknowledge that "[a]lthough not couched in terms of misjoinder under Rule 21, Defendant . . . argues . . . that the claims of [Herrejon] and [Isaula] . . . may not be prosecuted in the same action against it, because the claims arise from distinct policies of Defendant." (Rec. Doc. 9 at 2-3). Plaintiffs go on to concede that "[i]n terms of proper joinder, Defendant's point is well taken." (Rec. Doc. 9 at 3).

However, Plaintiffs also indicate that they object to severance prior to the close of discovery. (Rec. Doc. 9 at 3-4). As this Court's Order (doc. 15) following the case management conference indicates that discovery in this matter will not close until July 18, 2007, we agree that any motion to sever will be premature prior to that time, and accordingly, we will not order severance at this point. Following the close of discovery, however, we will entertain a Motion to Sever should

7

Defendant find its filing to be in order at that time.

Thus, we turn to consideration of the Motion for Notice to those members of the "production bonus class" that Plaintiff Herrejon seeks to represent in the prosecution of his FLSA claim.  (Rec. Doc. 24).

In the Motion for Notice and the briefing in support thereof, Plaintiffs argue that the only requirement for issuance of notice of a § 216 FLSA action ("§ 216"), see 29 U.S.C. § 216(b), is that "proposed class members [to whom the notice is sent] . . . be 'similarly situated' with the [P]laintiff."  (Rec. Doc. 28 at 8).[3] Plaintiffs proffer evidence obtained via discovery that reveals that 677 former and/or current IBC employees are similarly situated to Herrejon because calculation of their overtime pay rate also did not take into account the production bonuses received.  (Rec. Doc. 35 at 9).  Accordingly, Plaintiffs request that this Court issue an order 1) "approving class notice to the production bonus class of persons similarly situated with Plaintiff [] Herrejon," 2) "requiring Defendant to provide Plaintiffs' counsel" with all necessary information to provide such notice, and 3) "approving specifically the class notice" that Plaintiffs have proposed. (Rec. Doc. 28 at 11).

---

[3] However, implicit in Plaintiffs' requested relief, and, indeed, explicit in their arguments, is that the two requirements for a § 216(b) collective action to proceed are: 1) "the proposed class members . . . be 'similarly situated' with the plaintiff;" and 2) those purported class members "file a written consent to sue the employer."  (Rec. Doc. 28 at 8).

In its opposing brief, Defendant makes several alternative arguments.[4]  First, Defendant argues that no notice of Herrejon's § 216 claim should issue because two prerequisites to such notice exist: the purported class must 1) be "similarly situated" to the representative plaintiff; and 2) demonstrate sufficient interest in pursuing FLSA litigation.  (Rec. Doc. 33 at 5-7).  Defendant argues that Plaintiffs have not shown at least one of these elements.  (Rec. Doc. 33 at 5-7).  In the alternative, Defendant also argues that if notice of Herrejon's § 216 claim issues, it should be limited to only those persons who received a production bonus while employed at the Pennsylvania plant at which Plaintiffs worked because only current and/or former employees at that plant have shown an interest in the instant action.  (Rec. Doc. 33 at 7-8).

Our review of the law surrounding the issuance of notice of a collective action under § 216 of FLSA leads us to conclude that conditional certification of the "production bonus class" is appropriate at this time and that notice of this collective action should be issued as soon as is feasible.  Accordingly, we will order that within thirty (30) days of the date of this Order, Defendant shall provide Plaintiffs all necessary information in order to facilitate Plaintiffs' issuance of

---

[4] The Court is cognizant that Defendant has also argued that Plaintiffs' § 216 claims "Cannot Proceed Under 216(b) Because They Intend to Pursue a Rule 23 Class Action."  (Rec. Doc. 33 at 8).  However, we need not address this argument here in light of our above dismissal of Plaintiffs' state law claims.

Notice to the "production bonus class," which we will conditionally certify at this time.

Guiding our determination are the text of § 216(b) and the precedent interpreting it.  In relevant part, § 216(b) provides:

> An action to recover . . . may be maintained against any employer (including a public agency) . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Notably, § 216(b) contains no reference to the "sufficient interest" requirement that Defendant seeks to have us impose.

Moreover, the vast majority of the precedent to which Defendant directs us summarizes the requirements for a collective action under § 216(b) of FLSA as Plaintiffs have outlined them.[5]  Indeed, our colleagues on this Court have

---

[5] Indeed, the sole sources of authority upon which Defendant relies for its contention that "sufficient interest" among the proposed class must exist before Notice is ordered are from outside of this Circuit.  See Davis v. Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004) (citing Dybach v. Florida Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991)).  Although we may follow such authority if we find it persuasive, it is not binding on this Court.  For a number of reasons, including the established precedent in this Circuit that does not impose the "sufficient interest" requirement and the fact that Dybach may not stand for the strong proposition that Defendant suggests, we find unpersuasive Defendant's argument that Plaintiffs must show "sufficient interest" among proposed class members prior to the issuance of Notice.  See Dybach, 942 F.2d at 1567 (noting that "we reach that issue [whether a district court has power to issue notice under § 216(b)] because it would appear that there is considerable probability that Dybach will be able to proffer evidence to the district court on remand . . . showing that there are a number of employees of the department-employer who are 'similarly situated' and who may desire to 'opt-in.'") (emphasis added).

10

repeatedly held that "there are two requirements of the FLSA's opt-in provision: (1) all plaintiffs must be similarly situated; and (2) opt-in plaintiffs must consent in writing to be a named plaintiff." Evans v. Lowe's Home Ctrs., Inc., 2006 WL 1371073, at *2 (M.D. Pa. May 18, 2006). See also Bosley v. Chubb Corp., 2005 WL 1334565, at *2 (M.D. Pa. June 3, 2005) (summarizing the requirements as "(1) all plaintiffs must be 'similarly situated;' and (2) all plaintiffs must consent in writing to taking part in the suit."). Sister courts within the Third Circuit have concluded the same. See Chabrier v. Wilmington Finance, Inc., 2006 WL 3742774, at *2 (E.D. Pa. Dec. 13, 2006) (indicating that "[t]he burden is on the plaintiff to show that the proposed class satisfies two basic requirements: (1) class members must be 'similarly situated'; and (2) all members must affirmatively consent to join the action."); Aquilino v. Home Depot, Inc., 2006 WL 2583563, at *1 (D.N.J. Sept. 7, 2006) (noting that "[t]he burden is on the plaintiff to show that the proposed class satisfies two basic requirements. They are that (1) class members must be 'similarly situated' and (2) members must affirmatively consent to join the action or 'opt-in.'").

As our colleague from the Eastern District of Pennsylvania has noted:

In the absence of guidance from the Supreme Court and the Third Circuit, district courts have developed a two-tiered test to determine whether FLSA claimants are 'similarly situated' for the purposes of § 216(b). The first step in this test is conducted early in the litigation process, when the court has

11

minimal evidence. This step is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly-situated employees. At this stage, the court grants only conditional certification of the class for the purpose of notice and discovery, and this is done under a comparatively liberal standard. The second step is usually conducted after the completion of class-related discovery. During the second step, the court conducts a specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party. Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class.

Bosley, 2005 WL 1334565, at *2.

We find ourselves at the first step, at which "[c]ourts differ in the level of proof required." Chabrier, 2006 WL 3742774, at *2 (indicating that "[s]ome courts have found that mere allegations in the complaint are sufficient; others have required some factual showing that the 'similarly situated' requirement is satisfied."). We need not decide which of these two levels we require, however, as the submissions before provide us an ample factual showing that the proposed 677 class members to which Plaintiffs would like to issue notice are "similarly situated" to Herrejon because IBC has conceded that prior to October of 2006, the overtime pay rate of those employees who received a production bonus did not take the bonus into account. (Rec. Docs. 24, Exh. A; 35 at 9, Exh. F at 22-23). Accordingly, at this time, we will conditionally certify the "production bonus class" and order that Notice of this § 216(b) action be provided to all 677 members thereof.

12

Although we are sympathetic to Defendant's request that Notice be restricted to those employees who worked in the Pennsylvania plant at which our named Plaintiffs did, in light of the evidence before us, we are constrained to conclude that such Notice would be inadequate.[6]  We so conclude based on <u>Chabrier</u>, in which a colleague in the Eastern District declined to issue a nationwide notice because plaintiffs had failed to present any evidence that employees outside of the state at issue had been improperly denied overtime.  In so doing, she noted that "[a]lthough the plaintiff must meet only a liberal standard for determining whether there are other 'similarly situated' employees, there must be some evidence on which a reasonable inference about this could be made."  2006 WL 3742774, at *3. Unlike the circumstances in <u>Chabrier</u>, Plaintiffs in the instant action have shown, via Interrogatory Answers, as well as deposition testimony by an IBC representative, that prior to October of 2006, production bonuses were not taken into account when calculating overtime pay rates for all IBC employees who received such bonuses at IBC's plants in Pennsylvania, Florida, Texas, Arizona, Nevada, Tennessee, Indiana, and Virginia.  (Rec. Docs. 24, Exh. A; 35 at 9, Exh. F at 22-23).  Accordingly, Notice must be issued to all such persons.  Plaintiffs have

---

[6] Our dismissal of Plaintiffs' state law claims renders moot Defendant's argument that Plaintiffs' PMWA claims necessarily limit all putative class members to those who have worked at the Pennsylvania plant at issue.

indicated that the class includes approximately 677 persons (doc. 28 at 2), and we order that Notice will be issued thereto on the assumption that the figure is final.

Finally, we turn to the language of the Notice to be sent.  Our review of the parties' briefing on this issue, as well as the three (3) proposed Notices that have been submitted, reveals that the parties disagree about a wide variety of details concerning the Notice's content.  Although we understand that counsel are attempting to fulfill their duty of zealous representation, this Court simply will not conduct a piecemeal evaluation of each of these areas when, in fact, our disposition of the pending Motions should enable competent counsel to reach an agreement on the disputed areas.[7]  See, e.g., Bosley, 2005 WL 1334565, at *5 (ordering counsel to confer regarding the content of the proposed notice).

Thus, we direct counsel for both parties rededicate themselves to this task. Within thirty (30) days of the date of this Order, counsel for Plaintiffs and Defendant shall meet in order to resolve all disputed language and provide the Court with a letter indicating the results thereof.  Such letter shall either contain a copy of the agreed upon Notice, or shall certify the areas upon which the parties

---

[7] We note, however, that the Notice that counsel will be ordered to provide to this Court, within thirty (30) days, should reflect that all opt-in forms are to be returned to Plaintiffs' counsel, not this Court.  Simply stated, an administrative nightmare would ensue if even a fraction of the 677 forms to be mailed were returned to the Court, and Sperling v. Hoffman-La Roche, Inc., 862 F.2d 439, 440 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989), suggests that Plaintiffs' counsel, not this Court, should have the relationship with opt-in plaintiffs.

14

have failed to reach an agreement and provide a copy of the Notice provisions
upon which an agreement has been reached.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.  Defendant's Motion to Strike or for More Definite Statement (doc. 7)
    is **GRANTED** in part and **DENIED** in part to the following extent:

    a.  The Motion is **GRANTED** to the extent that Plaintiffs' PMWA
        claims are dismissed; and

    b.  The Motion is **DENIED** in all other respects.

2.  Plaintiffs' Motion for Notice to the Production Bonus, Opt-In Class
    (doc. 24) is **GRANTED** to the extent that:

    a.  We conditionally certify that Herrejon can pursue a collective
        action on behalf of the "bonus production class;" and

    b.  Within thirty (30) days of the date of this Order, Defendant
        shall provide Plaintiffs with all necessary information about the
        "bonus production class" members for Plaintiffs to effectuate
        Notice of this collective action upon them.

3.  Plaintiffs' Motion to Certify (doc. 27) is **DENIED** as moot.

4.  Counsel for Plaintiffs and counsel for Defendant are directed to
    provide the Court within thirty (30) days of the date of this Order

either 1) an agreed upon Notice to the "Production Bonus Class;" or

2) a letter certifying the areas upon which they have failed to reach an

agreement, as well as a copy of the Notice provisions upon which an

agreement has been reached.

s/ John E. Jones III
John E. Jones III
United States District Judge